Filed 8/19/14  P. v. Delgado CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

Califoria Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058109 |
| v. | (Super.Ct.No. RIF1200777) |
| JOSE RICARDO DELGADO, JR., | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Peter Quon, Jr. and Linh Lam, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I. INTRODUCTION

Early one morning, while high on methamphetamine, defendant and appellant Ricardo Delgado, Jr. and his live-in girlfriend were arguing in a bedroom they shared with their three-year-old daughter Jane Doe. Defendant retrieved a handgun from under the bed and it discharged. A bullet grazed the girlfriend's skull and pierced the wall approximately one foot above the crib where Doe lay sleeping. A jury found defendant guilty as charged of felony child endangerment (Pen. Code, § 273a, subd. (a)),[1] among other offenses.

Defendant was sentenced to 18 years 4 months in prison and appeals, claiming the trial court prejudicially erred in failing to instruct sua sponte on the lesser included offense of misdemeanor child endangerment. (§ 273a, subd. (b).) We affirm. No instructions on the lesser offense were warranted because insufficient evidence showed defendant committed the lesser but not the greater offense. Even if, as defendant testified, he did not mean to shoot his girlfriend and was not pointing the gun when it accidentally discharged, under the circumstances his actions were likely to produce great bodily harm or death to Doe. (§ 273a, subd. (a).) Under no view of the evidence did defendant's actions occur "under circumstances or conditions *other than* those likely to produce great bodily harm or death," which the jury had to find in order to find him guilty of misdemeanor child endangerment. (§ 273a, subd. (b), italics added.)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II. FACTUAL BACKGROUND

A. *Prosecution Evidence*

In December 2011, defendant lived in a house with his girlfriend of eight years, Stacy C., their three-year-old daughter Doe, his parents, and other family members. Defendant, Stacy C., and Doe shared a bedroom and Doe slept in a crib next to Stacy C.'s side of the bed.

On December 29, defendant arrived home around 11:00 p.m., after working late at his job as a maintenance supervisor at an apartment complex. Doe had a fever, and Stacy C. was lying next to her on the couple's bed in the bedroom. Defendant kissed Doe goodnight and went into the garage. Stacy C. was upset with defendant for working late and ignored him when he came into the bedroom.

Hours later, Stacy C. sent defendant out to purchase medicine for Doe. Defendant returned around 3:00 a.m. with the wrong medicine, then refused to give Stacy C. his car keys so she could buy the correct medicine. Around 4:00 a.m., Stacy C. called her father and asked him to take her to buy the right medicine. Stacy C. and defendant continued arguing while she waited for her father. Meanwhile, Stacy C. took defendant's cell phone and left it in the garage.

After Stacy C. returned home from the store, she was still upset with defendant and ignored him when he asked for his cell phone. Defendant began looking through Stacy C.'s purse for his cell phone, and the arguing continued. When defendant was out of the bedroom, Stacy C. knocked over defendant's briefcase. After defendant told Stacy

3

C. to pick up the briefcase, Stacy C. told him to "shut . . . up" and she was "done" arguing.

Defendant retrieved a revolver from under the bed, took the bullets out, held them in his hand, and told Stacy C. to "pick a bullet." Stacy C. told defendant to "pick a bullet" and to "pick a side" to shoot her on, and lifted her hair. Defendant put a bullet in the gun and spun the cylinder. After spinning the cylinder a second time, defendant moved toward Stacy C. and threatened to shoot her in her head if she did not "shut up." Stacy C. was standing by her side of the bed and Doe was asleep in her crib behind Stacy C., as defendant approached Stacy C. from the other side of the room. As defendant flicked his wrist to close the cylinder, he "put the gun up" and it discharged.

A bullet grazed Stacy C.'s skull and hit the wall around one foot above the top of the crib where Doe lay sleeping. Defendant dropped the gun and immediately became hysterical. He screamed to Stacy C. that he was sorry, he loved her, and he did not mean to shoot her.

At first, Stacy C. did not realize she had been shot or that her head was bleeding, but after she saw blood she called 911 and told the operator her boyfriend had shot her. At trial, Stacy C. denied that defendant pointed the gun at her, saying "he didn't have a chance to point it anywhere" and his finger was not on the trigger. She later admitted he pointed the gun at her.

As Stacy C. was speaking to the 911 operator, defendant's brother Rigoberto Delgado took the phone from Stacy C. and completed the call while Stacy C. sat on the

4

sofa waiting for paramedics. Rigoberto was asleep when he woke to a loud noise and screaming. He told the police that defendant "said he shot her in the head" and "[l]ook what I did to her."

Stacy C. was treated at the scene for her gunshot wound. She required eight stitches and spent three to four days in the hospital. The gun and several rounds of ammunition were found under the bed in the bedroom, and pieces of Stacy C.'s skin and hair were on the bedroom ceiling and floor. Stacy C. had gunshot residue or stippling on her face, indicating the gun discharged one to five feet from her face. A criminalist testified the gun had safety features that would have prevented it from accidentally discharging; it would not have fired unless the trigger was pulled.

B. *Defense Evidence*

Rigoberto had never witnessed any physical abuse between defendant and Stacy C., though he heard them argue, and testified the shooting was out of character for defendant because he was not the type of person "to get mad or hit anybody." Maria Delgado, defendant's mother, had never seen defendant and Stacy C. argue or strike one another. After the shooting, defendant was running around the house "jumping" and "crying" and appeared distant, as though he were not there.

A toxicologist testified defendant's blood contained 144 nanograms per milliliter of methamphetamine and eight nanograms per milliliter of amphetamine, the metabolite of methamphetamine, around 1:30 p.m. on December 30, 2011, approximately eight

5

hours after the shooting. The levels would have been double at the time of the shooting, and at those levels a person can be agitated and react very quickly to situations.

Defendant testified in his own defense. He smoked methamphetamine at work on the day of the shooting and twice in the garage after he returned home. He was feeling the effects of the drug at the time of the shooting; "mentally" he "wasn't normal." He intended only to frighten Stacy C. when he raised the gun, but he did not point it at her and he was surprised when it went off.

## C. *Verdicts and Sentencing*

A mistrial was declared on the principal charge of premeditated attempted murder in count 1 (§§ 664, 187, subd. (a)), after the jury deadlocked 11 to 1 on that count. The jury found defendant guilty as charged of felony child cruelty in count 2 (§ 273a, subd. (a)), assault with a firearm in count 3 (§ 245, subd. (a)(2)), and assault on a cohabitant in count 4 (§ 273.5, subd (a)). Personal firearm use enhancements were found true in counts 3 and 4 (§ 12022.5, subd (a)) and the jury also found defendant personally inflicted great bodily injury in count 4 (§ 12022.7, subd. (e)).

Defendant was sentenced to 18 years 4 months in prison: three years on count 4, the principal count, plus 10 years for the personal use enhancement and three years for the great bodily injury enhancement on count 4, plus 16 months on count 2. Additional terms were imposed but stayed on count 3 and the personal use enhancement on count 3. (§ 654.)

III.  ANALYSIS

Defendant claims the court prejudicially erred in failing to instruct sua sponte on the lesser included offense of misdemeanor child endangerment to the charge of felony child endangerment in count 2.  No instructions on the lesser offense were required because insufficient evidence showed defendant committed the lesser, misdemeanor offense but not the greater, felony offense.

"The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.  [Citations.]  'That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser.'  [Citations.]  'To justify a lesser included offense instruction, the evidence supporting the instruction must be substantial—that is, it must be evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist.' [Citations.]"  (*People v. Burney* (2009) 47 Cal.4th 203, 250.)

Felony child endangerment is committed by a person who, "under circumstances or conditions *likely to produce great bodily harm or death*, willfully causes or permits any child . . . to be placed in a situation where his or her person or health is endangered . . . ."  (§ 273a, subd. (a), italics added.)[2]  Misdemeanor child endangerment is a lesser

---

[2]  Section 273a, subdivision (a) defines felony child abuse and endangerment: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable

*[footnote continued on next page]*

7

included offense of felony child endangerment (*People v. Moussabeck* (2007) 157 Cal.App.4th 975, 980) and is committed by a person who willfully causes or permits the health of a child to be endangered, "under circumstances or conditions *other than those likely to produce great bodily harm or death . . . .*" (§ 273a, subd. (b), italics added.)[3]

As Justice Stanley Mosk observed in a 1999 concurring opinion, misdemeanor and felony child endangerment are distinguished by their "context element," that is, by the context in which the act of abuse or endangerment occurs. (*People v. Sargent* (1999) 19 Cal.4th 1206, 1230-1231 (conc. opn. of Mosk, J.).) As the statutes state, the felony offense occurs in "circumstances or conditions likely to produce great bodily harm or death" (§ 273a, subd. (a)), while misdemeanor offense occurs in "circumstances or conditions other than those likely to produce great bodily harm or death" (§ 273a, subd. (b); *People v. Sargent, supra*, at p. 1231 (conc. opn. of Mosk, J.)).

---

*[footnote continued from previous page]*
physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years."

[3] Section 273a, subdivision (b) defines misdemeanor child abuse and endangerment: "Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor."

Viewing the evidence in the light most favorable to defendant, even if defendant did not mean to shoot Stacy C. or fire his revolver, his act of pointing the loaded revolver at the wall as Doe lay sleeping in her crib nearby, was without a doubt *likely* to produce great bodily harm or death to Doe. (§ 273a, subd. (a).) Under no view of the evidence did defendant's act of wielding occur under conditions or circumstances other than those likely to produce great bodily harm or death. (§ 273a, subd. (b).)

*People v. Sheffield* (1985) 168 Cal.App.3d 158 does not assist defendant's claim. There, the defendant was convicted of felony child abuse based on his continuous course of conduct in beating two children over a period of several months. (*Id*. at p. 166.) The defendant denied inflicting the more serious incidents of alleged abuse and minimized the seriousness of other alleged acts of abuse. (*Id*. at p. 167.) If the jury believed him, it could have found him guilty of misdemeanor but not felony child abuse. (*Ibid*.) But here defendant admitted wielding a loaded firearm during a heated argument with Stacy C. and while extremely high on methamphetamine. His actions amounted to nothing less than felony child endangerment, because they were likely to produce great bodily injury or death to Doe and did not occur under circumstances other than those likely to produce great bodily harm or death. (§ 273a, subds. (a), (b).)

Defendant maintains his "act of firing a gun in the proximity of the child was ambiguous," but he does not explain the ambiguity. He posits that "under the worst case scenario" he intended to harm Stacy C., but there was no evidence he intended to harm Doe or "directed" any anger toward Doe. He reasons that if the jury believed he intended

9

to harm Stacy C., then "[t]here was no evidence," or the jury could not have reasonably inferred, that *he knew* his act of firing the gun at Stacy C. "would or could endanger" Doe "since one had to believe he intended the bullet to hit [Stacy C.], not miss [Stacy C.] and hit the wall."

These arguments emphasize defendant's lack of intent to harm Doe but disregard the likely, grave consequences to Doe of his act of wielding the loaded firearm while high on methamphetamine during a heated argument with Stacy C.  Defendant's actions were likely to result in Doe being fatally shot or seriously injured, even though defendant did not intend to harm her or "direct" anger toward her.  (See *People v. Sanders* (1992) 10 Cal.App.4th 1268, 1273 [felony child endangerment does not require specific intent to harm child].)  In sum, no instructions on misdemeanor child endangerment were required to be given here because the evidence was insufficient to show defendant committed misdemeanor but not felony child endangerment.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____

J.

We concur:

RAMIREZ _____

P. J.

CODRINGTON _____

J.

10