10 Cal.App.4th 1268 (1992)
13 Cal. Rptr.2d 205
THE PEOPLE, Plaintiff and Respondent,
v.
BOBBY LEE SANDERS, Defendant and Appellant.
Docket No. F015952.
Court of Appeals of California, Fifth District.
November 5, 1992.
*1270 COUNSEL
William P. Daley, under appointment by the Court of Appeal, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, W. Scott Thorpe and Michael J. Weinberger, Deputy Attorneys General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
THAXTER, J.
Appellant Bobby Lee Sanders was convicted by a jury on one count of lewd and lascivious conduct with a child under the age of 14. (Pen. Code,[1] § 288, subd. (a).) He was sentenced to six years in state prison, less presentence custody credits.
On appeal, Sanders argues the trial court erred in permitting his impeachment with proof of a prior felony conviction for child endangerment (§ 273a, subd. (1)). We hold that child endangerment is not a crime of moral turpitude, so that impeachment by use of that conviction was improper under People v. Castro (1985) 38 Cal.3d 301 [211 Cal. Rptr. 719, 696 P.2d 111]. Applying the Watson[2] standard of harmless error, however, we conclude it is not reasonably probable a result more favorable to appellant would have been reached absent the error. We also hold that Sanders waived his right to raise an issue of alleged prosecutorial misconduct. Accordingly, we affirm.

FACTS
Until February 9, 1990, eight-year-old Melissa R. and her younger brother lived with their mother, Samantha R., and her mother's boyfriend, appellant Sanders. On February 8, 1990, Sanders spanked Melissa with a belt. The next day she told her school principal, and subsequently the police. As a result, she and her brother went to live with their aunt. At that time Melissa did not mention any sexual contact with appellant.
*1271 On March 1, 1990, Melissa's aunt and Melissa learned that the children were going to be moved to a foster home as part of a reunification plan. Later that day, Melissa first revealed that she had been sexually molested by Sanders during December 1989. She told her aunt that Sanders had placed his penis in her vagina and her mouth. The aunt arranged a meeting between Melissa and her mother, Samantha, to discuss the matter, following which Samantha consented to a medical examination of Melissa.
The examination revealed an injury to Melissa's vaginal area consistent with penetration on more than one occasion by an object approximately the size of a finger. The injury occurred more than 10 days before the examination and perhaps as long as 4 years before.
Melissa testified at trial that Sanders touched her in her "private" on several occasions, sometimes at night when she was sleeping in her bedroom, and sometimes during the day when she was playing in her room. He also inserted his penis in her mouth at least once. She denied that he ever placed his penis in her vagina.
Several witnesses, including Samantha R., testified for the defense. Samantha testified that she saw no behavioral changes in Melissa during the period of the alleged molestations. She did not see or hear any indication of the acts described by Melissa, even though they allegedly occurred in the bedroom adjoining Samantha's room. Because she was a child abuse victim herself, she was alert to the signs of possible abuse of her children.
Sanders testified in his own defense, categorically denying that he had ever touched Melissa sexually. He admitted that he had two prior felony convictions, one resulting from the spanking incident involving Melissa on February 8, 1990, and one for grand theft in 1979.
The defense testimony suggested several possible alternative explanations for Melissa's vaginal injury, including a bicycle accident, masturbation, sexual activity with her brother, and molestation by her biological father. The defense also suggested that Melissa was motivated to accuse Sanders of molestation because of her anger over the spanking incident and a desire to remain living with her aunt.

DISCUSSION

I. Felony child endangerment is not a crime involving moral turpitude for impeachment purposes.

Before trial, defense counsel moved in limine to exclude evidence of Sanders's two prior felony convictions. After extended argument the trial *1272 court ruled that both convictions were for crimes involving moral turpitude. The court then applied the standards of Evidence Code section 352 and found that the probative value of the convictions for impeachment purposes was not substantially outweighed by the probability that such use would unduly consume time or "create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (1a) Sanders challenges the court's denial of his exclusion motion only as it relates to the conviction for child endangerment and only as to the court's finding that child endangerment is a crime of moral turpitude.
The moral turpitude requirement was imposed by our Supreme Court in People v. Castro, supra, 38 Cal.3d 301. (2) This court has summarized the Castro rule many times, beginning with People v. Mansfield (1988) 200 Cal. App.3d 82, 87 [245 Cal. Rptr. 800]:
"Pursuant to People v. Castro, supra, 38 Cal.3d 301, and subject to the trial court's discretion under Evidence Code section 352, only prior felony convictions that necessarily involve moral turpitude may be used to impeach a witness in a criminal proceeding. [Citation.] `Moral turpitude' means a general `"readiness to do evil"' [citation], i.e., `an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' [Citations.] Castro makes no attempt to list or define those felonies which involve moral turpitude, but it makes clear that moral turpitude does not depend on dishonesty being an element of the felony. `[I]t is undeniable that a witness' moral depravity of any kind has some "tendency in reason" [citation] to shake one's confidence in his honesty.' [Citation.]
(3) "Finally, Castro holds that in deciding whether a felony offered for impeachment necessarily involves moral turpitude, the trial court may look only to the `least adjudicated elements' of the crime for which the witness was previously convicted. [Citation.] This concept simply means that in determining whether a previous felony involves moral turpitude the court cannot go behind the conviction and take evidence on or consider the facts and circumstances of the particular offense. Instead, the court must look to the statutory definition of the particular crime and only if the least adjudicated elements of the crime necessarily involve moral turpitude is the prior conviction admissible for impeachment purposes. [Citation.]"
Unfortunately, no clear, comprehensive definition or test for determining what felonies do or do not involve moral turpitude has emerged from the decisions following Castro. Analysis has proceeded on a case-by-case, or *1273 statute-by-statute, basis, a process which presumably will continue until every felony has been considered. (1b) No published decision has yet dealt with felony child endangerment (§ 273a, subd. (1)), the crime at issue here, so we must contribute to the growing ranks of published cases in this area.
Section 273a, subdivision (1) provides:
"Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one year, or in the state prison for 2, 4, or 6 years."
As our Supreme Court has observed, violation of this statute "can occur in a wide variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect." (People v. Smith (1984) 35 Cal.3d 798, 806 [201 Cal. Rptr. 311, 678 P.2d 886].)
The statute does not require a specific intent to inflict harm. (People v. Pointer (1984) 151 Cal. App.3d 1128, 1134 [199 Cal. Rptr. 357].) (4) Instead, the degree of culpability necessary for violation is that of criminal negligence.[3] (People v. Peabody, supra, 46 Cal. App.3d at pp. 46-47.) (1c) A sincere, good faith belief that the defendant's conduct is in the child's best interest is not a defense. (People v. Rippberger (1991) 231 Cal. App.3d 1667, 1682 [283 Cal. Rptr. 111].) Further, there is no requirement that actual bodily injury occur. (People v. Hernandez (1980) 111 Cal. App.3d 888, 895 [168 Cal. Rptr. 898]; People v. Jaramillo (1979) 98 Cal. App.3d 830, 835 [159 Cal. Rptr. 771].)
Thus, applying Castro's "least adjudicated elements" criterion, a prior conviction of section 273a, subdivision (1) implies presence of the following elements: (1) care or custody of a child by the defendant; (2) circumstances likely to produce great bodily harm or death; and (3) criminal negligence in *1274 permitting the child to be placed in a situation endangering the child's person or health.[4]
We are not aware of any decision finding a crime is one of moral turpitude when the conviction can result from passive conduct unaccompanied by criminal intent. The Third Appellate District recently found that the offense described in section 273d (willful infliction of cruel or inhuman corporal punishment on a child resulting in traumatic condition) involves moral turpitude. (People v. Brooks (1992) 3 Cal. App.4th 669 [4 Cal. Rptr.2d 570].) We, however, have previously distinguished sections 273a, subdivision (1), and 273d as being "different crimes with different elements." (People v. Sheffield (1985) 168 Cal. App.3d 158, 163 [214 Cal. Rptr. 40].) Section 273d requires active conduct by the defendant, resulting in actual injury to the child. In addition, the requirement of "cruel or inhuman corporal punishment" suggests a baseness of purpose not necessary under section 273a, subdivision (1). (Compare People v. Rippberger, supra, 231 Cal. App.3d 1667 [sincere, but unreasonable, belief in prayer treatment of seriously ill child constitutes criminal negligence sufficient for conviction of child endangerment].)
Respondent cites this court's decision in People v. Lindsay (1989) 209 Cal. App.3d 849 [257 Cal. Rptr. 529], holding that battery upon a police officer (§ 243, subd. (c)) is a crime of moral turpitude. That crime, however, requires both an affirmative act (use of force) and a mental state (actual or constructive knowledge that the victim is a peace officer in the performance of his or her duties) from which a readiness to do evil can be inferred. (209 Cal. App.3d at p. 857.) Neither element is necessary for a conviction under section 273a, subdivision (1).
Other offenses which have recently been found to involve moral turpitude are similarly distinguishable from child endangerment. Shooting into an inhabited dwelling (§ 246) requires active conduct engaged in with malice. (People v. White (1992) 4 Cal. App.4th 1299 [6 Cal. Rptr.2d 259].) Inflicting corporal injury on a spouse or cohabitant (§ 273.5) requires use of force resulting in a traumatic condition. (People v. Rodriguez (1992) 5 Cal. App.4th 1398 [7 Cal. Rptr.2d 495].)
Because section 273a, subdivision (1) can be violated by wholly passive conduct, free from any element of force, violence, threat, fraud, deceit, or *1275 stealth, even when motivated by a sincere, good faith but unreasonable belief the conduct is in the child's best interests, we conclude that a conviction under the statute does not necessarily imply a general readiness to do evil or any moral depravity. The court erred in allowing impeachment through evidence of Sanders's prior conviction for child endangerment.

II., III.[*]
.... .... .... .... .... .... .... .

DISPOSITION
Judgment affirmed.
Ardaiz, Acting P.J., and Dibiaso, J., concurred.
A petition for a rehearing was denied December 7, 1992, and petitions of both respondent and appellant for review by the Supreme Court were denied February 18, 1993. Lucas, C.J., and George, J., were of the opinion that the petitions should be granted.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.
[1] All statutory references are to the Penal Code unless otherwise indicated.
[2] People v. Watson (1956) 46 Cal.2d 818, 836 [229 P.2d 243].
[3] "[Criminal negligence] means that the defendant's conduct must amount to a reckless, gross or culpable departure from the ordinary standard of due care; it must be such a departure from what would be the conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life." (People v. Peabody (1975) 46 Cal. App.3d 43, 48-49 [119 Cal. Rptr. 780]; see also, CALJIC No. 3.36.)
[4] When it denied the in limine motion, the trial court inaccurately described the section 273a, subdivision (1) offense as one involving "force under circumstances and conditions which permit a child to suffer injury, the infliction upon that person of physical pain and suffering." The court may have been led to its mistaken belief by the prosecutor's improper argument describing the facts underlying the prior conviction.
[*] See footnote, ante, page 1268.