[No. D031496. Fourth Dist., Div. One. June 23, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MARCEL XAVIER WILLIAMS, Defendant and Appellant.

**COUNSEL**

Donal M. Hill, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez and Sabrina Y. Lane, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BENKE, J.**—Marcel Xavier Williams (Williams) appeals following his conviction of possession of cocaine base for sale, in violation of Health and Safety Code section 11351.5. Williams, whose testimony was rejected by the jury, asserts that it was error to have permitted the prosecutor to impeach his credibility with a prior conviction for a violation of Penal Code[1] section 69. Williams argues that the trial court erred when it determined that section 69 was a crime involving moral turpitude. We disagree, and affirm.

---

[1] All further statutory references are to Penal Code.

## BACKGROUND[2]

### Prosecution Case

Williams has been a crack cocaine addict since 1982. He and a companion crossed the street against a red light in a high drug sales area, which is often frequented by drug sellers operating in pairs. Williams ignored a police officer's request to halt, and kept on walking. When he was finally stopped by an officer, Williams had in his pants pocket a sunglasses case containing 14 units of rock cocaine, with a total weight of 1.63 grams. The cocaine rocks in the case were in varying sizes, which would be sold for differing amounts.

When the cocaine rocks were discovered, Williams tried to run away, but the arresting officer chased him and caught him two blocks away. (It was stipulated that Williams knew he was in possession of rock cocaine.) The arresting officer opined that, based on the quantity and packaging, the cocaine was possessed for sale. A narcotics detective also testified that, based on his experience, the cocaine rocks which Williams possessed were possessed for purposes of sale.

### Defense

Williams testified that he had found the sunglasses case just moments before he was contacted by police, knew that it contained crack cocaine, and ran away because he thought it was a "set up" (that is, the police planted the drugs for Williams to discover, and he was only a victim). According to Williams, he was not planning to sell the 14 rocks of cocaine, but instead to personally consume all of them by the next morning.

### Impeachment

The prosecutor sought to impeach Williams's credibility with two prior felonies: a 1983 conviction for burglary, and a 1993 conviction for resisting an executive officer by means of force or violence, in violation of section 69. Counsel for Williams argued that section 69 was most akin to section 148, resisting a police officer,[3] and thus it should not be held to be a crime of moral turpitude.

The prosecution argued that in *People* v. *Lindsay* (1989) 209 Cal.App.3d 849, 857 [257 Cal.Rptr. 529], the court held that the crime of battery on a

---

[2]In light of the narrow issue raised on appeal, we abbreviate our recitation of the underlying (and largely undisputed) facts.

[3]Whether or not this offense itself is one involving moral turpitude has not been determined in the reported cases. As the question is not before us, we do not further address the issue.

peace officer (§ 243, subd. (c)) was a crime of moral turpitude,[4] and because that crime was the one most closely analogous to section 69, section 69 should be also.

The trial judge agreed with the prosecutor, although also requiring that the impeaching matters be referred to in front of the jury only as "felonies affecting credibility."

In his argument to the jury, the prosecutor told the jury that Williams "has admitted to being convicted of two felonies that go right to credibility."

### DISCUSSION

Section 69 provides: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment."

■ This appeal poses the question whether a violation of section 69 is a crime of moral turpitude, a question which has not been previously decided.[6]

This court has set out in an earlier opinion the principles guiding such an inquiry: " 'Pursuant to *People* v. *Castro, supra,* 38 Cal.3d 301, . . . only prior felony convictions that necessarily involve moral turpitude may be used to impeach a witness in a criminal proceeding. (*Id.* at p. 306.) "Moral turpitude" means a general " 'readiness to do evil' " (*id.* at p. 314) . . . .

---

[4]"There is no doubt the intentional, willful and unlawful use of force upon a peace officer, however slight, coupled with *actual* knowledge the victim is a peace officer in the performance of his or her duties, is clearly a crime of moral turpitude and demonstrates a readiness to do evil." (*People* v. *Lindsay, supra,* 209 Cal.App.3d at p. 857.)

[5]"[T]he term 'executive officer' has long been held to include police officers." (*People* v. *Buice* (1964) 230 Cal.App.2d 324, 335 [40 Cal.Rptr. 877]; see also *People* v. *Pacheco* (1968) 263 Cal.App.2d 555, 557-558 [69 Cal.Rptr. 822].) Almost all reported decisions discussing section 69 involve peace officers, and Williams's conviction came after he resisted obeying and then attacked two deputies while in the Descanso facility as a condition of probation.

[6]As has been noted: "Unfortunately, no clear, comprehensive definition or test for determining what felonies do or do not involve moral turpitude has emerged from the decisions following [*People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111]]. Analysis has proceeded on a case-by-case, or statute-by-statute, basis, a process which presumably will continue until every felony has been considered. No published decision has yet dealt with . . . the crime at issue here, so we must contribute to the growing ranks of published cases in this area." (*People* v. *Sanders* (1992) 10 Cal.App.4th 1268, 1272-1273 [13 Cal.Rptr.2d 205].)

*Castro* makes no attempt to list or define those felonies which involve moral turpitude, but it makes clear that moral turpitude does not depend on dishonesty being an element of the felony. . . . [¶] Finally, *Castro* holds that in deciding whether a felony offered for impeachment necessarily involves moral turpitude, the trial court may look only to the "least adjudicated elements" of the crime . . . . [O]nly if the least adjudicated elements of the crime necessarily involve moral turpitude is the prior conviction admissible for impeachment purposes. [Citation.]' " (*People* v. *Forster* (1994) 29 Cal.App.4th 1746, 1756-1757 [35 Cal.Rptr.2d 705].)

As to the "least adjudicated elements" of section 69, in a case involving a juvenile making death threats against a police officer, the California Supreme Court has recently had occasion to construe the statute in the abstract, as is required: "The statute sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty. [Citation.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 814 [66 Cal.Rptr.2d 701, 941 P.2d 880].)

It is thus clear that, contrary to Williams's argument on appeal, any violation of section 69 involves (1) threats, violence, or force, directed toward (2) an executive officer.[7] These are the factors, of course, upon which the court in *People* v. *Lindsay*, *supra*, 209 Cal.App.3d at page 857, based its conclusion that assault on a peace officer in violation of section 243, subdivision (c), was a crime of moral turpitude, and thus the trial court here was correct in finding *Lindsay* persuasive.

Many courts have held that "moral turpitude" includes "conduct involving violence, menace, or threat." (*People* v. *Lepolo* (1997) 55 Cal.App.4th 85, 90 [63 Cal.Rptr.2d 735]; see also *People* v. *Sanders* (1992) 10 Cal.App.4th 1268, 1274 [13 Cal.Rptr.2d 205], citing *People* v. *Lindsay*, *supra*, 209 Cal.App.3d at p. 857; and *People* v. *Thornton* (1992) 3 Cal.App.4th 419, 424 [4 Cal.Rptr.2d 519] [violation of section 422, proscribing terrorist threats, itself "violates generally accepted standards of moral behavior," and is a crime of moral turpitude].)

A violation of section 69 always requires force, menace or threats, directed at an executive officer. (*In re Manuel S.*, *supra*, 16 Cal.4th at p. 814.)

---

[7]Williams also argues that section 69 does not, in its least adjudicated elements, involve moral turpitude because there is no requirement the force or violence be applied to the *person* of the officer. We cannot agree. Indirect uses of force or violence (hostage-taking, for example) are as morally contemptible as any direct applications of force or violence.

The cases demonstrate that the offenses which are most analogous to the present one, that is, those cases involving the threat or use of force against peace officers, are held to be crimes of moral turpitude. For these reasons, we hold the trial court correctly found that section 69 is a crime of moral turpitude, and we reject Williams's contrary arguments.[8]

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Work, J., concurred.

A petition for a rehearing was denied July 15, 1999, and appellant's petition for review by the Supreme Court was denied October 6, 1999.

---

[8]Even were we incorrect in our analysis, no basis appears for a reversal. Williams would still have been properly subject to impeachment with the prior burglary conviction, and as the trial judge observed, "I'm not sure if it makes a lot of difference between one or two [impeachable priors]." Even were it error to have permitted impeachment of Williams with two, instead of one, unidentified "felonies affecting credibility," as has been held: "Applying the *Watson* standard of harmless error . . . we conclude it is not reasonably probable a result more favorable to appellant would have been reached absent the error." (*People* v. *Sanders*, *supra*, 10 Cal.App.4th at p. 1270, fn. omitted.) That holding applies to this case also.