Filed 2/25/21  P. v. Bryson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C083989 |
| Plaintiff and Respondent, | (Super. Ct. No. 62147420) |
| v. | |
| ROBBEN LUKE BRYSON, | |
| Defendant and Appellant. | |

Defendant Robben Luke Bryson was charged with four counts of resisting an executive officer involving four peace officers.  (Pen. Code, § 69.)[1]  A jury found him guilty of one count but was unable to reach a verdict on the remaining counts.  After the court declared a mistrial on those counts, the prosecutor dismissed them.  In a bifurcated proceeding, defendant admitted that he had served two prior prison terms (§ 667.5, subd.

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

(b)) and was out on bail at the time he committed the resisting offense (§ 12022.1, subd. (b)). The trial court sentenced defendant to a split sentence of six years, with five years in county jail and one year on mandatory supervision. The court suspended execution of the two-year sentence imposed for the out-on-bail enhancement pending the outcome of another case against defendant.

On appeal, defendant contends the trial court erred in failing to instruct the jury that misdemeanor resisting a peace officer (§ 148, subd. (a)(1)) is a lesser included offense of resisting an executive officer (§ 69). In supplemental briefing, filed after defendant served his sentence, he asserts that the two section 667.5, subdivision (b) prior prison term enhancements should be stricken pursuant to Senate Bill 136 (S.B. 136).

We strike defendant's two section 667.5, subdivision (b) prior prison term enhancements and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Charges and Enhancement Allegations

Defendant was charged with four counts of resisting an executive officer. (§ 69.) The counts involved Deputy Bryant (count one), Sergeant Tindall (count two), Officer Rayback (count three), and Officer McCauley (count four). It was further alleged that defendant had served two prior prison terms (§ 667.5, subd. (b)) and was out on bail at the time of the offenses (§ 12022.1, subd. (b)).

### Prosecution's Case

The charges in this case arose from a traffic stop and arrest of defendant. The traffic stop and arrest were captured on the in-car camera of a police vehicle and played for the jury. Additionally, four police officers testified. We have reviewed the video.

While on routine patrol, Deputy Roger Bryant of the Placer County Sheriff's Department observed defendant run a red light on his motorcycle. Deputy Bryant immediately turned his patrol vehicle around and pursued defendant at a high rate of speed. Given the speed and distance he had to travel to catch defendant, Deputy Bryant

2

estimated that defendant was driving his motorcycle at speeds up to 90 to 100 miles per hour. The speed limit was 50 miles per hour.

When Deputy Bryant caught up to defendant at a traffic light, he advised dispatch that he intended to conduct a traffic stop. Shortly after the light turned green, Deputy Bryant activated his overhead lights and turned on his siren. Defendant, however, did not immediately stop. Instead, he passed a vehicle by moving into the lane for oncoming traffic, then moved back into his lane and continued to drive his motorcycle for a short distance until he turned into a parking lot at Thunder Valley Casino. Deputy Bryant parked near defendant and immediately got out of his vehicle. At that moment, defendant, who was highly agitated, ran towards Deputy Bryant, yelling and screaming. Deputy Bryant ordered him to get on the ground. After defendant stopped moving toward Deputy Bryant and calmed down, another officer arrived. The other officer was carrying a baton and Taser on his belt, which caused defendant to become highly agitated again.

Because defendant tried to walk away several times and had to be repeatedly told to come back, additional officers were requested. City of Lincoln Police Officers Jesse McCauley and Todd Rayback, as well as Sergeant Joshua Tindall of the Placer County Sheriff's Department were dispatched to the scene. When they arrived, defendant was very agitated, emotional, and acting "extremely unpredictable."

While Deputy Bryant performed a records check, the other officers monitored defendant. During the records check, defendant told the officers that he was not going back to jail.

The records check revealed that defendant's California driver's license was suspended, he was on postrelease community supervision (PRCS),[2] and had a criminal

---

[2] When defendant testified, he explained that he was on PRCS after serving a sentence for unlawful possession of a firearm by a felon.

3

history involving robbery, drugs, stolen property, unlawful possession of a firearm by a felon, and vehicle theft. The records check further revealed that defendant was not the registered owner of the motorcycle, and that the motorcycle's registration was not current, which indicated to Deputy Bryant that the motorcycle might be stolen.

Following the records check, Deputy Bryant decided to arrest defendant for operating a vehicle without a valid license. He opted to handcuff defendant and further detain him until it could be determined whether or not the motorcycle was stolen.

When Deputy Bryant informed defendant that he was going to be detained pending an investigation regarding whether the motorcycle was stolen, defendant stated that he was not going to be detained and attempted to flee.[3] Defendant turned away from Deputy Bryant and initially moved in one direction as if the try to flee, but he was boxed-in by officers. Defendant quickly changed direction and as he moved in a different direction, he spun his body and swung his arms to prevent Deputy Bryant from controlling him.[4] At that moment, Officer Rayback moved toward defendant and wrapped both his arms around defendant's upper body. Defendant, however, was able to break free from Officer Rayback's grasp by spinning away from him. Defendant then swung one of his arms twice at the officers as he was forced to the ground. While he was on the ground, he was repeatedly told to stop resisting and threatened with the use of a Taser. He refused to comply with the orders to stop resisting and had to be physically

[3] We note that the video taken by the camera in the police vehicle clearly shows the events leading to defendant's arrest. To the extent the testimony given by the officers at trial differs from the video evidence, we summarize the facts as shown by the video. For instance, contrary to the testimony at trial, the video does not show that defendant took a fighting stance. Nor does the video show that defendant ran toward Officer Rayback and ducked his head, causing it to strike Officer Rayback in the cheek.

[4] Although not entirely clear from the video, it appears that defendant might have pushed Deputy Bryant as he was spinning away from him.

restrained by four officers because he was kicking his legs, squirming, refusing to put his arms behind his back, and trying to push his body up off the pavement. He continued to struggle even after he was handcuffed.

### Defense Case

Defendant testified. He did not deny he failed to stop at a red light. Instead, he said he made a right turn on a red light after placing one of his feet on the ground.

Defendant acknowledged he did not immediately stop when Deputy Bryant attempted to pull him over. He said he continued to ride his motorcycle because he did not want to leave it on the side of the road. He further testified he told Deputy Bryant that the owner of the motorcycle gave him permission to use it, and that he had his friend's phone number in his phone.

Defendant also acknowledged that he yelled at Deputy Bryant, but denied that he became aggressive when Deputy Bryant told him that he was going to be further detained. However, defendant admitted that he became upset and "flighty," told the officers he was not going to be detained, and used force to get away from them. He claimed, however, that he did not use "unnecessary force," meaning he did not use more force than was used against him, and did not try to harm any of the officers. He said he was immediately taken to the ground after he backed into and spun away from an officer.

Defendant also claimed he did not try to hit or kick any of the officers, and he did not use any force when the officers were taking him to the ground. He claimed his arms were moving in a "swatting" motion when he was being forced to the ground, not a "swinging" motion. He testified that he was just trying to keep his balance.

Defense counsel requested instruction on section 148, subdivision (a)(1), as a lesser included offense to section 69. The trial court refused, finding that there was insufficient evidence to support the instruction.

5

**Verdict and Sentencing**

The jury found defendant guilty on count three—resisting Officer Rayback by the use of force or violence, but could not reach a verdict on the remaining counts. The trial court declared a mistrial on those counts. In a bifurcated proceeding, defendant admitted the sentencing enhancement allegations.

The trial court sentenced defendant to a split sentence of six years, with five years in county jail and one year on mandatory supervision. The trial court suspended execution of the two-year sentence imposed on the out-on-bail enhancement pending the outcome of another case against defendant. Thereafter, the court granted the prosecutor's motion to dismiss the remaining counts.

## DISCUSSION

### I. Instruction on Lesser Included Offense of Resisting a Peace Officer

Defendant contends that the trial court prejudicially erred in failing to instruct the jury that misdemeanor resisting a peace officer (§ 148, subd. (a)(1)) is a lesser included offense of resisting an executive officer (§ 69).[5] We disagree.

"California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense 'necessarily included' in the charged offense, if there is substantial evidence that only the lesser crime was committed. This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence." (*People v. Birks* (1998) 19 Cal.4th 108, 112.)

There are two tests used "in determining whether an uncharged offense is necessarily included within a charged offense:  the 'elements' test and the 'accusatory

---

[5]  Police officers are "executive officer[s]" under section 69.  (*People v. Williams* (1999) 72 Cal.App.4th 1460, 1463, fn. 5.)

pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228.) However, the court need not instruct on lesser included offenses where the lesser offense is not supported by the evidence. (*People v. Avila* (2009) 46 Cal.4th 680, 705.)

As relevant here, section 148, subdivision (a)(1), provides that: "Every person who willfully *resists, delays, or obstructs* any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her . . . employment . . . shall be punished [as a misdemeanor]." (Italics added.) Force or violence is not an element. Section 69 provides that: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, *or* who knowingly *resists*, by the use of *force or violence*, the officer, in the performance of his or her duty, is punishable [as a felony or a misdemeanor]." (Italics added.)

Section 69 provides two distinct ways in which a defendant may violate its provisions. (*People v. Smith* (2013) 57 Cal.4th 232, 240-241 (*Smith*).) Under the second prong, a defendant may violate the statute by *resisting* a peace officer by the use of force or violence.[6] (*Id*. at pp. 240-241.) The prosecution here was based on the second prong. Defendant argues that there was sufficient evidence from which a rational jury could conclude that his resistance did not involve the use of force or violence, and as a result, the trial court should have instructed on the lesser included misdemeanor offense.

_____

[6] Under the first prong, a defendant may violate the statute by attempting to *deter* a peace officer from performing his or her duties. Actual use of force or violence is not required.

The People properly concede that section 148, subdivision (a)(1) is a lesser included offense of section 69, as pled in this case. However, they contend there was insufficient evidence to support the instruction. (See *Smith, supra*, 57 Cal.4th at p. 245 ["[A] trial court is not required to instruct the jury on a necessarily included lesser offense ' "when there is no evidence that the offense was less than that charged." ' "]; see also *People v. Breverman* (1998) 19 Cal.4th 142, 154.)

Because the prosecutor chose only to prosecute defendant under the second prong, resisting an executive officer by the use of force or violence, the jury was instructed in relevant part, as follows: "To prove that the Defendant is guilty of this crime, the people must prove that, one, the Defendant unlawfully used force or violence to resist an executive officer. Two, when the Defendant acted, the officer was performing his lawful duty. And, three, when the Defendant acted, he knew the executive officer was performing his duty." As noted, the trial court denied defendant's request to instruct the jury on section 148, subdivision (a)(1), as a lesser-included offense of section 69, finding that there was no substantial evidence to support the instruction.

The trial court did not abuse its discretion in refusing to instruct on the misdemeanor as a lesser included offense. On this record, which includes a video recording of the event, no reasonable jury could have concluded that defendant violated section 148, subdivision (a)(1), but not section 69. The evidence presented at trial showed that defendant forcibly resisted. The record discloses that defendant had to be physically taken to the ground by multiple officers, including Officer Rayback, because he refused to be further detained pending an investigation regarding the owner of the motorcycle and attempted to flee. Before defendant was taken to the ground, he spun his body and swung his arms to prevent Deputy Bryant from controlling him. Shortly thereafter, he broke free from Officer Rayback's grasp by forcefully spinning away from him. He then swung his arm at the officers as they attempted to control him. While defendant testified his arms were moving in a "swatting" motion when he was being

8

forced to the ground, not a "swinging" motion, and that he was just trying to keep his balance, the movement we see depicted in the video recording appears to be a punching or swinging motion, made twice while he was being taken to the ground. After defendant was on the ground, he was repeatedly told to stop resisting and threatened with the use of a Taser. Defendant refused to comply with the orders to stop resisting and had to be physically restrained by four officers, including Officer Rayback, because he was kicking his legs, squirming, refusing to put his arms behind his back, and trying to push his body up off the pavement. He continued to struggle even after he was handcuffed. When defendant testified, he did not dispute the officers' characterization of the struggle on the ground. He also conceded that he used force to move away from the officers. Accordingly, there was no evidence that defendant committed the lesser offense of resisting without the use of force or violence. Therefore, the trial court properly refused to instruct the jury that section 148, subdivision (a), was a lesser included offense of section 69.

We find support for our decision in *People v. Carrasco* (2008) 163 Cal.App.4th 978. In *Carrasco*, the defendant was convicted of resisting an executive officer by force or violence under section 69 when he resisted arrest after he approached a sheriff's station, engaged in an altercation with officers, and placed his hand in a duffle bag while opening the station door. (*Carrasco*, at pp. 981-982.) In attempting to arrest him, one officer grabbed the defendant's waist while the defendant tried to ride away on a bicycle, then the officer forced the defendant to the ground, where other officers attempted to control his arms. (*Id*. at p. 982.) The defendant "had to be physically taken to the ground by [an officer] because he refused to comply with . . . repeated orders to remove his hand from his duffle bag." When he was on the ground, "he refused to comply with . . . repeated orders to relax and . . . to 'stop resisting' [and] continued to struggle with [the officers] . . . 'yelling, kicking [and] cussing,' and said he would 'kick [the officers'] ass[es].' " (*Id*. at pp. 985-986.) The defendant "continued to squirm" and refused to

9

surrender his right hand until he was pepper sprayed. (*Id*. at p. 986.) Like here, "[t]here was no contrary evidence disputing the officer's description of the struggle on the floor." (*Ibid*.) The *Carrasco* court concluded "the jury would have had no rational basis to conclude [the defendant] wrestled with the officers, for which they convicted him of resisting or delaying an officer, but the struggle did not involve force or violence. . . ." (*Ibid*.; see also *People v. Bernal* (2013) 222 Cal.App.4th 512, 519 ["a violation of § 69 need not involve any force or violence directed toward the person of an executive officer"; "[the] force used by a defendant *in resisting* an officer's attempt to restrain and arrest the defendant is sufficient to support a conviction"].)

## II. Senate Bill No. 136

When sentence was imposed, the version of section 667.5, subdivision (b) then in effect provided for a one-year enhancement for each prior prison term served for "any felony," with an exception not applicable here. While defendant's appeal was pending, the Governor signed Senate Bill 136, which amended section 667.5, subdivision (b) to limit the application of prior prison term enhancements to people who have served a sentence for certain sexually violent offenses. (Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.) (§ 667.5, subd. (b).) After defendant served his sentence in this matter, he filed supplemental briefing asking that we strike the prior prison term enhancements.

The parties agree, and we concur, that under the principles articulated in *In re Estrada* (1965) 63 Cal.2d 740, 745-748 (*Estrada*), S.B. 136 applies retroactively to cases not yet final on appeal because it ameliorates punishment for serving a prior prison term. (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 761, 772; *People v. Winn* (2020) 44 Cal.App.5th 859, 872-873; *People v. Lopez* (2019) 42 Cal.App.5th 337, 340-342; *People v. Jennings* (2019) 42 Cal.App.5th 664, 680-682.) We also agree with the parties that defendant's prior prison terms no longer qualify under section 667.5, subdivision (b).

In his supplemental briefing, defendant asserted that his request for relief under *Estrada* and S.B. 136 is not moot, even though he had served his sentence. This is so,

according to defendant, because under *People v. Sellner* (2015) 240 Cal.App.4th 699, 701, excess custody credits may apply to reduce outstanding fines and fees. While it is unclear what fees and fines to which defendant is referring, we note that "excess custody credits may not be applied to reduce victim restitution, a restitution fine, the court operations assessment, or the court facilities assessment." (*People v. Petri* (2020) 45 Cal.App.5th 82, 92-93.) Nevertheless, defendant is entitled to have the prior prison term enhancements stricken.

## DISPOSITION

The judgment is modified to strike the section 667.5, subdivision (b) enhancements. As so modified, the judgment is affirmed.

_____/s/_____
MURRAY, J.

We concur:

_____/s/_____
BLEASE, Acting P. J.

_____/s/_____
RENNER, J.

11