Filed 1/17/25  P. v. Heers CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083761 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN446923) |
| ANGELA HEERS, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Anthony J. Campagna, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher Beesley and Namita Patel, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Angela Heers of assault with a deadly weapon (Pen. Code[1] § 245, subd. (a)(1)). Heers was placed on formal probation for two years.

Heers contends that the trial court prejudicially erred by admitting into evidence (1) allegations Heers made against the victim in an application for a restraining order she filed approximately a month before she committed the assault charged in this case; and (2) Heers's prior conviction for a crime of moral turpitude in 2018, for the purpose of impeaching Heers's credibility as a witness. We conclude that Heers's contentions lack merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

M.W. owns and lives on a multiacre property in Oceanside, some of which he rents out to F.R. to run a plant nursery. Heers works for M.W. on the property and lives in a room in M.W.'s house. Heers and F.R. were not on good terms with each other. In July 2023, Heers unsuccessfully petitioned for a restraining order against F.R., in which she sought, among other things, an order requiring F.R. to stay away from the property and from M.W.

On the morning of August 23, 2023, F.R. walked up to M.W.'s house to check on M.W., who was sick. Heers was in front of the house painting a gate. When Heers saw F.R. approaching, she confronted him near the front door and told him to leave. Heers and F.R. then got into a physical altercation, which resulted in F.R. incurring a cut on his left torso and an injury to his hands. During their trial testimony, Heers and F.R. gave different descriptions of the incident.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

According to F.R., after Heers told him to leave, Heers started the physical altercation by swinging a long heavy metal tool at F.R.'s torso while he was near the front door.[2] The tool struck him and inflicted a cut. F.R. explained that when Heers tried to hit him with the tool a second time, he grabbed the tool and struggled with Heers while she kicked him multiple times. Heers also hit him in the face several times during the incident. F.R. eventually released his grip on the tool, ran away, and called 911.

Heers testified that F.R. was the aggressor. Heers explained that she was trying to block the front door with her body, but F.R. pushed her. Heers tried to protect herself by slapping F.R.'s face, and she kicked him one time. She also tried to bar the door with the metal tool, resulting in a tug-of-war between her and F.R. over the tool.

Heers was charged with assault with a deadly weapon. (§ 245, subd. (a)(1)).) The jury found her guilty of that offense, and Heers was placed on formal probation for two years.

## II.

## DISCUSSION

A. *Evidence Regarding the Petition for a Restraining Order Heers Filed Against F.R.*

We first consider Heers's contention that the trial court erred in admitting evidence regarding the July 19, 2023 petition for a restraining order that Heers filed against F.R. approximately a month before the incident at issue in this case (the Petition).

---

[2] At trial, the tool was identified as a "spud bar," which is a roofing tool weighing 15 to 20 pounds. It consists of a five-foot long metal pole, with a flat metal square blade on the end.

1.    *Relevant Proceedings*

The People filed a motion in limine to introduce a certified copy of the Petition.  The motion in limine argued that the Petition was relevant to prove Heers's motive for attacking F.R. because it showed her "prior disdain" for him.

The parties and the trial court discussed the motion in limine during an unreported chambers conference, which was later continued on the record.  As described on the record, the trial court indicated during the unreported conference that it would allow the People to introduce evidence about some of the contents of the Petition to show Heers's motive, but it would not allow admission of the Petition itself.[3]

The record contains no evidence that defense counsel ever took the position that the contents of the Petition should be excluded from evidence in their entirety.  Defense counsel filed a motion in limine seeking to exclude evidence of prior restraining order petitions that F.R. and other people had filed *against* Heers, but that motion in limine did not seek to exclude evidence of the Petition that *Heers* had filed against F.R.  Moreover, when the unreported chambers conference was later discussed on the record, neither the trial court nor defense counsel referred to defense counsel having made any objection regarding the Petition during that conference.

---

[3]    The trial court later summarized its understanding of why the Petition was relevant.  "The reason that the People are seeking to admit this evidence is to argue that Ms. Heers had a motivation, a motive, to have [F.R.] removed from the property, that that in some way would motivate her to commit an assault on him; and that she was motived [*sic*] for him to leave."  As the trial court understood the People's position, "the argument here is that she filed this restraining order and then, essentially, she didn't want him on the property so bad that she took it into her own hands."

4

At the in limine hearing, the trial court explained that, during the chambers conference, it suggested that counsel "take some of the statements that were made by [Heers] in the declaration to support the restraining order and transfer them onto a different document[.] [I]f the attorneys would stipulate to that, that . . . could be presented as statements made by [Heers]." Accordingly, the next day, the prosecutor presented the trial court with a stipulation that she had drafted describing the contents of the Petition, but she explained that defense counsel did not agree to the inclusion of several items that the prosecutor believed should be included. After hearing from the parties about those disputed items, the trial court agreed with defense counsel that the disputed allegations should be omitted pursuant to Evidence Code section 352 because they were "either . . . so outrageous that they would lead a jury to perhaps speculate and wonder or they really don't make sense in some way."[4] However, the trial court clarified that "if [Heers] will testify, then the calculus changes. Certainly, if she testifies, you can ask her about all of these things because she's there on the stand to either admit or deny that she said these things and the reason for them." Thereafter, defense counsel and the prosecutor signed a revised version of the stipulation.

During F.R.'s testimony, the prosecutor introduced the stipulation and read it to the jury. As read, that stipulation stated,

[4]     The only items that the trial court kept in the stipulation, over defense counsel's objection, were two of the orders that Heers had sought in the Petition: (1) an order that F.R. not be within a thousand yards of the mailbox at M.W.'s property; and (2) an order that F.R. not be allowed to sell or move any of his nursery plants. The trial court ruled that those items were probative of the relief Heers was requesting, and their admission would not violate Evidence Code section 352. On appeal, Heers makes no argument specifically singling out those items as prejudicial.

"It is stipulated by and between the parties that, one, on July 19th, 2023, Angela Heers petitioned the Court for a restraining order against [F.R.].

"In that petition, Ms. Heers made the following accusations about [F.R.]: He cocked his hand back and punched her; he pushed her through the gate onto her residence;

"He yanked her hand through a chain fence, crippling her hand; he hit her with a shovel; he chased her with a shovel; he threatened to have her kicked off the property;

"He trespasses; he commits verbal abuse; he commits physical abuse; he commits psychological abuse; he commits emotional abuse; he commits financial abuse;

"He has broken city codes; he is illegally mining and grading; he has illegally hooked up to home utilities, water and electricity; he has stolen her items, such as vehicles, keys, computers, phones, money, work materials;

"He has filed false police reports; he has broken her tools; he has unleashed dogs against her and have them bite her. He is illegally working on the property.

"It is further stipulated, item number 2, that on July 19th of 2023, in the same petition, Angela Heers made the following request with respect to [F.R.]: That he must stay 1000 yards away from the mailbox on [M.W.'s real property], that he must not come near [M.W.'s real property], that he must not come near [M.W.], and that he cannot sell or move any plants on any of his nursery sites."

Pursuant to the trial court's ruling, the jury did not learn that the Petition was denied. However, during his testimony, F.R denied having done any of the things that Heers alleged in the Petition.

When Heers did testify at trial, the prosecutor sought to question her, on cross examination, about the remaining items in the Petition that the trial

court had ruled should not appear in the stipulation. Defense counsel objected, explaining that those allegations were "prejudicial because they imply a level of mental instability, potentially," and counsel was "concerned about evidence of potential mental health issues coming through and the jury using that against" Heers. The trial court allowed the prosecutor to question Heers about the allegations, but with leading "yes" or "no" questions about whether Heers made those allegations. The trial court agreed that "some of the statements were arguably . . . what one would consider farfetched, in an objective sense," but it explained that "at this point she's taken the stand and I think [it] is relevant and probative as to her credibility. She's now a witness. The jury can judge her credibility." The trial court also indicated that, as with the allegations appearing in the stipulation, the evidence was relevant to Heers's motive in assaulting F.R. Further, the trial court observed that defense counsel would have the opportunity on redirect to allow Heers to explain any of the allegations.

The prosecutor then elicited testimony from Heers about the additional allegations in the Petition. Heers confirmed that the Petition included allegations that F.R. (1) committed "judicial abuse"; (2) had people who work in the court inform him when Heers filed motions; (3) sexually abused his employees; (4) had his twin brother abuse her; (5) had his wife abuse her; (6) stole exotic fruits and nuts from her; (7) poisoned the ground; (8) poisoned the water; (9) severely tortured her; and (10) kept illegal roosters, with collars that make them crow "24/7" to intentionally deprive her of sleep. Further, Heers confirmed that the relief she sought in the Petition included that F.R. be detained for (1) an agricultural investigation; (2) an investigation of a biological attack on U.S. soil; (3) an investigation of a biological attack on livestock; and (4) an investigation of a biological attack on west coast

7

waterways. During redirect, defense counsel asked Heers to clarify the statements in the Petition regarding a "biological attack" and "waterways."

2.      *Heers's Argument Lacks Merit*

Heers argues on appeal that the "entirety" of the Petition should have been excluded pursuant to Evidence Code section 352 because it was only marginally relevant to show her motive, but it was highly prejudicial.[5] However, as we will explain, in light of the procedural history we have set forth above, Heers's appellate argument regarding the Petition is misguided.

As we have discussed, some of the allegations in the Petition were admitted into evidence by means of the stipulation because the trial court viewed them as relevant to Heers's motive. The record contains no indication that defense counsel made a *general* objection to the admission of the Petition when the People brought a motion in limine seeking its admission. Further, the trial court *sustained* defense counsel's objection to the *specific* allegations from the Petition that defense counsel argued were too prejudicial to include in the stipulation. Later, however, those more prejudicial allegations from the Petition were admitted into evidence during the prosecutor's cross examination of Heers because they were relevant to her credibility as a witness. Defense counsel *did* object to the admission of those allegations.

---

5      Evidence Code section 352 provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) Heers's challenge to the admission of the evidence is based solely on Evidence Code section 352. She does not dispute that, in the absence of exclusion under that provision, any relevant statements made in the Petition were admissible under the hearsay exception for statements of a party opponent (Evid. Code, § 1220).

On appeal, Heers argues that *none* of the allegations from the Petition should have been admitted, even those that were described in the stipulation read to the jury. She argues that the evidence was introduced to prove Heers's motive, but motive was only a "collateral" issue, and the allegations in the Petition were "highly prejudicial" to Heers because they "cast her in an unfavorable light" and "materially affected [her] credibility."[6] However, Heers does not acknowledge, and seems not to be aware, that *additional* allegations from the Petition were later admitted during the prosecutor's cross examination of Heers, and that they were admitted precisely *because* they were relevant to Heers's credibility as a witness. Specifically, referring to the allegations appearing in the stipulation, Heer's opening appellate brief argues that "although the trial court properly *curbed several of the excesses from the prosecutor's attempts to introduce such evidence*, its failure to exclude such evidence in its entirety constituted an abdication of its responsibilities under Evidence Code section 352." (Italics added.) Once again appearing not to realize that *additional* allegations in the Petition were eventually admitted during Heers's cross examination because they were relevant to Heers's credibility, that brief focuses on the admission of the stipulation alone, arguing that "[e]ven as limited by the trial court, the stipulation included twenty separate allegations by [Heers] against [F.R.], including not only specific acts including acts of violence, but also broad allegations of verbal, physical, psychological, emotional, and financial abuse.

---

6      Heers argues in her appellate brief that the trial court improperly admitted the allegations from the Petition, despite their inflammatory nature, on the *further* ground that they were relevant to show Heers's character. The premise of Heers's argument fails. We see no indication in the record that the trial court allowed evidence from the Petition into evidence based on its relevance to show Heers's character.

As such, those allegations constituted precisely the kind of inflammatory statements to which section 352 has historically been directed."

To the extent Heers's appellate challenge is focused on the evidence described in the stipulation read to the jury, that argument has been forfeited. "[A] challenge to the admission of evidence is not preserved for appeal unless a specific and timely objection was made below." (*People v. Anderson* (2001) 25 Cal.4th 543, 586; see also Evid. Code, § 353, subd. (a) [error in admitting evidence may not be the basis for the reversal of a judgment unless "an objection to or a motion to exclude or to strike the evidence . . . was timely made and so stated as to make clear the specific ground of the objection or motion"].) Here, as we have explained, the record contains no indication that defense counsel ever objected to the admission into evidence of Heers's allegations against F.R. that were described in the stipulation read to the jury.[7] Accordingly, Heers may not bring an appellate challenge to the admission of that evidence.

Defense counsel *did* object in the trial court when the prosecutor sought to cross examine Heers about the *additional* allegations she made in the Petition, which were not included in the stipulation. However Heers's appellate briefing does not develop an argument challenging the admission of those additional allegations. In fact, Heers's appellate briefing does not even *acknowledge* that any additional allegations were admitted during Heers's cross examination. Moreover, as we have explained, the trial court's principal reason for allowing the admission of the additional allegations was

---

[7] As we have described, defense counsel did unsuccessfully object to the inclusion in the stipulation of two of the items of relief Heers requested in the Petition. However, Heers makes no specific argument on appeal challenging the inclusion of those items in the stipulation or explaining why they were unduly prejudicial.

to allow the jury to evaluate Heers's credibility as a witness, with the understanding that defense counsel could try to rehabilitate Heers's credibility by allowing her to explain herself on redirect.  Heers makes no attempt to discuss whether, in light of the relevance of the evidence to Heers's credibility as a witness, and defense counsel's opportunity to rehabilitate her, the evidence should nevertheless have been excluded under Evidence Code section 352.

"Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; see also *People v. Garza* (2005) 35 Cal.4th 866, 881 ["on appeal a judgment is presumed correct, and a party attacking the judgment, or any part of it, must affirmatively demonstrate prejudicial error"].)  " 'It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.' " (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 204 (*Flores*).)  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited." (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075.)

Because Heers has failed to make any argument challenging (or even acknowledging) the trial court's admission of evidence from the Petition during the prosecutor's cross examination of her, any such challenge has been forfeited.  We therefore do not analyze whether the trial court was within its discretion to admit, during the prosecutor's cross examination of Heers, the *additional* allegations that were not already described in the stipulation.

11

B.   *Heers's Challenge to the Admission of Evidence That She Was Convicted*
     *of a Crime of Moral Turpitude*

We next consider Heers's contention that the trial court erred in allowing the prosecutor to elicit testimony from Heers that she had been convicted of a crime of moral turpitude.

1.   *Relevant Background*

Heers incurred a misdemeanor conviction in 2018 for brandishing a weapon (§ 417, subd. (a)(1)).[8]   Defense counsel filed a motion in limine requesting that evidence of the conviction be excluded at trial.   Conversely, the People filed an in limine motion to admit the evidence for the purpose of impeachment if Heers chose to testify.   At an in limine hearing, the trial court ruled, over defense counsel's objection, that if Heers testified, the prosecutor could impeach her with the conviction, but without revealing any information about what crime was committed.

When Heers testified, the prosecutor asked if she had been convicted of "a crime of moral turpitude."   Heers stated that she had pled guilty because she "had to," even though she was not guilty.   The jury did not learn any details about the conviction.

2.   *Applicable Legal Standards*

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352.  [Citations] '[T]he admissibility of any past misconduct for impeachment is limited at the

---

[8]   The prosecutor explained at an in limine hearing that the factual basis in Heers's change of plea form for the 2018 conviction stated, "I, in the presence of a person, exhibited a deadly weapon in a threatening manner."

12

outset by the relevance requirement of moral turpitude.  Beyond this, the latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad.' " (*People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).)  Thus, when the "least adjudicated elements"[9] of a misdemeanor offense involve moral turpitude, a witness may be impeached with that conviction, subject to Evidence Code section 352.  (*People v. Chavez* (2000) 84 Cal.App.4th 25, 28 (*Chavez*).)

"The California Supreme Court has divided crimes of moral turpitude into two groups.  [Citation.]  The first group includes crimes in which dishonesty is an element (i.e., fraud, perjury, etc.).  The second group includes crimes that indicate a " 'general readiness to do evil,' " from which a readiness to lie can be inferred.  [Citation.]  Crimes in the latter group are acts of 'baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' " (*Chavez*, *supra*, 84 Cal.App.4th at pp. 28–29.)  Those crimes include "conduct involving violence, menace, or threat." (*People v. Williams* (1999) 72 Cal.App.4th 1460, 1464).

Once it is established that the prior conviction involves moral turpitude, "the latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad.' [Citations]  When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the

---

9    The phrase "least adjudicated elements" is a term of art, also used in other legal contexts, that refers to "the elements of the offense of which the witness was previously convicted," as opposed to the underlying facts of the conviction.  (*People v. Castro* (1985) 38 Cal.3d 301, 316 (*Castro*).)

witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*Clark, supra*, 52 Cal.4th at p. 931.)

"A trial court's discretionary ruling under Evidence Code section 352 will not be disturbed on appeal absent an abuse of discretion." (*People v. Lewis* (2001) 26 Cal.4th 334, 374.) In particular, "[b]ecause the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion." (*Clark, supra*, 52 Cal.4th at p. 932.)

3.  *Heers Has Not Established That the Trial Court Abused Its Discretion*

Heers contends that, for several reasons, the trial court abused its discretion in allowing the prosecutor to elicit testimony from Heers that she had been convicted of a crime of moral turpitude.

As to the threshold issue of whether brandishing a weapon is a crime of moral turpitude, Heers contends that determination depends on the underlying facts of the offense, and that the facts underlying her conviction may not qualify. We reject the argument based on *People v. Lepolo* (1997) 55 Cal.App.4th 85.

In *Lepolo*, the trial court admitted evidence that the defendant waved a machete towards a police officer and threatened him with it. (*Lepolo, supra*, 55 Cal.App.4th at p. 88.) *Lepolo* explained that, even without considering any particular facts involved in the case beyond defendant's commission of the crime of brandishing a weapon, that conduct qualified as moral turpitude based on the crime's "least adjudicated elements." (*Lepolo, supra*, 55 Cal.App.4th at p. 91 ["Even if we were to view [defendant's] conduct

14

narrowly, as constituting merely brandishing a weapon, [defendant] cites no authority holding that even the least adjudicated elements of brandishing do not involve moral turpitude."].)  Thus, there is no merit to Heers's contention that in *Lepolo* "the conviction became a crime of moral turpitude not because of the act of brandishing, but because of the defendant's *other* conduct."  The fact that Heers was convicted of brandishing a weapon establishes she committed a crime of moral turpitude.

Next, Heers identifies several factors that she contends the trial court should have relied upon in deciding to exclude evidence of the conviction pursuant to Evidence Code section 352.

First, she notes that the conviction occurred "five years earlier," apparently referring to case law directing a court to consider whether a prior conviction was "near or remote in time" in deciding whether to exclude it under Evidence Code section 352.  (*Clark, supra*, 52 Cal.4th at p. 931.)  To the extent Heers intends to argue that a conviction occurring five years earlier was "remote in time," we reject the argument.  Although the phrase "remote in time" does not have an exact meaning, something that occurs only five years prior is not normally considered remote.  (Cf. *People v. Mireles* (2018) 21 Cal.App.5th 237, 246 ["Although '[t]here is no consensus among courts as to how remote a conviction must be before it is too remote. [Citation.] . . . [A] conviction that is 20 years old  . . . certainly meets any reasonable threshold test of remoteness.' "]; see also *People v. Campbell* (1994) 23 Cal.App.4th 1488, 1497 ["a 10-year-old conviction is not too remote in time to be admissible under [Evidence Code] section 352"]; *People v. Lewis* (1987) 191 Cal.App.3d 1288, 1297 ["In 1983, appellant was convicted and sentenced for two rapes committed in 1977, and a robbery committed in 1981. The present offenses were committed in 1985.  None of the prior offenses

15

were so remote as to diminish their probative value."].)  Therefore, we are not convinced that the age of Heers's prior conviction should have weighed in favor of its exclusion.

Second, Heers points out that brandishing a weapon is not the type of offense that "necessarily reflects [Heers's] veracity or credibility."  We understand Heers to be referring to the fact that brandishing does not belong to the category of crimes in which "dishonesty is an element," but rather to the group of crimes that "indicate a ' "general readiness to do evil," ' from which a readiness to lie can be inferred."  (*Chavez, supra*, 84 Cal.App.4th at p. 28.)  Although that consideration is certainly relevant in deciding whether to exclude a conviction from evidence under Evidence Code section 352, the trial court was not *required* to exclude it on that basis.  "[C]onvictions which are assaultive in nature do not weigh as heavily in the balance favoring admissibility as those convictions which are based on dishonesty or some other lack of integrity.'  [Citation.]  'Not as heavily' does not, of course, mean 'not at all.' "  (*Castro, supra*, 38 Cal.3d at p. 315.)  Here, we see no basis for concluding that the trial court abused its "broad" discretion in admitting evidence of the conviction for impeachment (*Clark*, supra, 52 Cal.4th at p. 932) merely because it did not involve an offense that has dishonesty as an element.

Third, Heers points out that the prior conviction was a misdemeanor rather than a felony.  We understand Heers to be relying on our Supreme Court's observation that "a misdemeanor offense . . . is less probative of moral turpitude or dishonesty than is a felony."  (*Clark, supra*, 52 Cal.4th at p. 932.)  However, that consideration alone does not establish that the trial court abused its discretion in admitting evidence of the prior conviction.  (See *id*. at p. 931 ["A witness may be impeached with any prior conduct involving moral

16

turpitude *whether or not it resulted in a felony conviction,*" subject to the trial court's exercise of "broad" discretion under Evid. Code § 352 (italics added)].)

Fourth, Heers argues that the admission of the prior conviction was unduly prejudicial, and thus should have been excluded, because of the facts associated with the prior conviction. Heers argues that because the prior conviction "involved a weapon," admitting evidence of that conviction "created the very "real possibility that the jury would use the prior conviction not only to impeach [Heers's] credibility, but as evidence of [Heers's] alleged propensity for the use of such weapons." The argument is misplaced because the trial court specifically ruled that the prosecutor should *not* elicit testimony about the nature of the prior conviction. The jury therefore did *not* learn that the prior conviction was for brandishing a weapon.

Finally, Heers states that the evidence was prejudicial and therefore should have been excluded because it "materially affected the jury's perception of [Heers's] credibility in what was otherwise a factually close," "he said, she said" case. However, that point does not weigh in favor of *excluding* the conviction. Because credibility was especially relevant in this case, the trial court could consider that relevance as a reason *toward* deciding that the conviction's probative value outweighed the grounds for excluding it under Evidence Code section 352. Moreover, " ' "[p]rejudice," as used in Evidence Code section 352, is not synonymous with 'damaging.' [Citation.] Rather, it refers to evidence that uniquely tends to evoke an emotional bias against the defendant as an individual, and has little to do with the legal issues raised in the trial.' " (*People v. Miles* (2020) 9 Cal.5th 513, 587.) The prejudice that section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. (*People v. Baker* (2021) 10 Cal.5th 1044, 1089.) Evidence that served to

lessen Heers's credibility was prejudicial in that it addressed a central disputed issue in the case, but that is not the type of prejudice addressed by Evidence Code section 352.

In sum, Heers has not established that the trial court abused its discretion by allowing the prosecutor to elicit testimony that Heers incurred a prior conviction of moral turpitude.

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.